GULOTTA, Chief Judge.
This is an appeal from a judgment upholding the denial of an application to sell alcoholic beverages at a bar located in a district zoned for residential use. Because we conclude that the City Code prohibits the permit and that the bar does not enjoy a non-conforming use, we affirm the judgment.
On October 9, 1985, Chris Schoop applied for an alcoholic beverage permit for 2139 Simon Bolivar Avenue in New Orleans, a location that had been operated as a bar for several years by prior tenants. The bar was one of four separate units in a building that enjoyed a non-conforming commercial use in an area zoned for multiple residential purposes. In addition to the bar, the building housed a hotel, a restaurant, and a cleaning business. Although the pri- or alcoholic beverage permits for the location had been approved “for hotel operation only”, the bar and hotel were operated as separate businesses and had no connecting doorways.
On November 19, 1985, the Collector of Revenue of the Department of Finance denied Schoop’s application because she had failed to meet the requirements of Sec. 5-45.1 of the Code of the City of New Orleans. The letter of denial stated in pertinent part:
“Section 5-45.1 of the City Code provides that ‘no permit shall be granted for the establishment or opening of any barroom ... or other place where beverages of high alcoholic content or beer or ale are sold at retail, to be consumed on the premises, in any residential district of the City as defined in Ordinance No. 4264, M.C.S., as now or hereafter amended’. This location is zoned RM-4 residential district.
Permits were at one time issued at this location in conjunction with the operation of a hotel. It has come to our attention that this bar is not operated in conjunction with the hotel.”
Although it prohibits barrooms in residential districts, Sec. 5-45.1 further recognizes a non-conforming use in favor of properly licensed bars that were already in operation at the time the ordinance became effective. These preexisting establishments can remain in business as long as they maintain proper licenses and permits and are continuously operated as barrooms with no lapse longer than six consecutive months.
Schoop appealed the denial of her application to the New Orleans Alcoholic Beverage Control Board, which conducted a hearing on December 10, 1985. The Board heard testimony and argument on two basic issues: 1) whether or not Schoop had applied for her permit within six months of the time the prior tenant had ceased operating the premises as a bar; and 2) whether the previous bar had enjoyed a lawful nonconforming use under an alcoholic beverage permit that had been approved “for hotel operation only”. After taking these matters under advisement, the Board rendered a decision affirming the Collector of Revenue’s denial of Schoop’s application. The Board made no specific findings and gave no written reasons.
Schoop thereafter appealed to the district court. Walter R. Chevalier, Jr., the owner of the premises, intervened in the suit against the Board to assert his vested interest in maintaining the use of the premis *833 es as a lounge. After the parties submitted briefs, the trial court affirmed the Board’s decision to deny the application.
In written reasons for judgment, the trial judge concluded that prior liquor permits had been issued at the location in conjunction with the operation of the hotel. She further observed, however, that the bar and the hotel, though in the same building, were separate operations with no connection between them. The judge concluded that the City was “under no obligation to issue an alcoholic beverage permit as an accomodation, when the relationship between these two businesses never existed.”
Appealing, Schoop and Chevalier contend that the City should have issued an alcoholic beverage permit because the bar enjoyed a non-conforming use under Sec. 5-45.1. They allege that the location had been operated as a bar before the passage of the statute and had remained in continuous operation since then without any lapse longer than six months. Specifically, they contend: 1) that the City is estopped from arguing that the bar lacked the non-conforming use because the Collector of Revenue failed to cite this reason in his letter denying Schoop’s application; 2) that the bar’s non-conforming use was preserved because Schoop filed her application for the liquor permit within six months of the time the previous tenant had ceased operating a bar at the premises; 3) that the bar remains non-conforming within the meaning of Sec. 5-45.1 because other businesses located in the same building have retained their non-conforming commercial status in the residential neighborhood; and 4) that the Collector of Revenue must issue the permit because he failed to deny Schoop’s application within thirty-five days as required by statute. We find no merit to these contentions.
LETTER OF DENIAL
Schoop and Chevalier first argue that the Collector of Revenue’s letter denying her application failed to state the specific cause for refusing her request for a permit. According to Schoop, because the letter fails to state that the bar has lost its non-conforming use under Sec. 5-45.1, the City should not be allowed to assert this argument as a “new cause” for denying her application. We disagree.
The November 19, 1985 letter of denial informed Schoop that she had failed to meet the requirements of Sec. 5-45.1. The letter quoted the portion of this section prohibiting bars in residential areas and told the applicant that the bar at this location had not been operated in conjunction with the hotel according to the prior liquor permit. Although the letter did not expressly state that the bar lacked a “nonconforming use” within the meaning of Sec. 5-45.1, this message was implicit in the letter and, upon referring to the full text of the City Code section, Schoop could not be mistaken about the reason for the denial.
Furthermore, Schoop has failed to show any prejudice under the circumstances. At the appeal hearing before the Alcoholic Beverage Control Board, attorneys for the City and Schoop presented testimony and arguments on the issue of the bar’s nonconforming status. The matter was fully explored at the administrative hearing and is therefore properly before us in this appeal.
NON-CONFORMING USE
Schoop and Chevalier further contend that the evidence presented at the hearing failed to show that the bar has ever lost its non-conforming use. They point out that the former tenant who operated a lounge on the premises was not evicted until April 12,1985, and that Schoop applied for a new liquor permit less than six months later, on October 9, 1985. Under these circumstances, Schoop and Chevalier argue that the non-conforming use remains in effect because there has been no lapse in continuous operation of the lounge for a period in excess of six consecutive months.
The Alcoholic Beverage Control Board heard conflicting evidence on the factual issue of when the previous tenant ceased operating a bar on the premises. A representative of the Department of Finance and Revenue testified that the former bar oper *834 ator’s request to obtain a liquor permit at another location was denied on March 31, 1985, and she had paid no sales taxes on the bar at 2139 Simon Bolivar after that date. On the other hand, the testimony of a bar patron and the affidavit of the operator of the cleaning establishment in the building supported a conclusion that the former tenant operated the bar until late April, 1985. Schoop’s attorney filed a copy of a judgment evicting the prior tenant on April 12, 1985.
Even assuming that Schoop filed her application for a liquor permit within six months of the time the prior tenant ceased to operate the bar, this time period is not dispositive of the case. The pertinent issue is whether or not the premises ever enjoyed a valid non-conforming use to operate as a bar in this residential neighborhood.
In order to have a non-conforming status within the meaning of Sec. 5-45.1, a premises existing at the time of the passage of the section must have been “lawfully operated” as a “bona fide barroom ... where beverages of high alcoholic content or beer or ale were lawfully sold at retail to be consumed on the premises, and for which the proper licenses and permits have been granted and are in effect....” [Emphasis ours]. Documents in the record show that the prior alcoholic beverage permits issued to the 2139 Simon Bolivar location were approved for “hotel operation only”. Nonetheless, the owner of the premises testified that he had built the bar as a separate business entity from the hotel and the bar was operated independently of the hotel without any physical connection between the two businesses. Although the former tenant had leased both the bar and hotel premises and had operated both businesses, the bar was not physically located in the confines of the hotel and was open to the public as a separate business unconnected to the hotel. Patrons had to leave the hotel to go to the bar and vice versa.
Considering this undisputed evidence, we conclude that the premises at 2139 Simon Bolivar was not lawfully operating as a bona fide barroom under a proper permit within the meaning of Sec. 5-45.1 to qualify for non-conforming status that would exempt it from the prohibition against barrooms in residential districts. The former tenant did not comply with the permit that approved the sale of alcoholic beverages “for hotel operation only”. The Collector of Revenue expressed this conclusion in its letter of November 19, 1985, and the Board, in affirming the denial, implicitly agreed. The trial judge likewise concluded that the Board had no obligation to issue an alcoholic beverage permit to Schoop since the relationship between the hotel and bar had never existed. In light of the evidence, we cannot say the trial judge erred.
“NON-CONFORMING” STATUS OF REMAINDER OF BUILDING
Because the bar is part of a single building that still contains an active cleaning business and continues to enjoy non-conforming commercial use in the residentially zoned district, Schoop and Chevalier further contend that the bar likewise retains its non-conforming status as an alcoholic beverage outlet. Citing State ex rel Time Saver Stores v. Board of Zoning Adjustments of City of New Orleans, 261 So.2d 273 (La.App. 4th Cir.1972), writ refused 262 La. 311, 263 So.2d 47 (1972), they argue that to deny Schoop a liquor permit will effectively put part of the building “out of commerce” since it is not designed as a multiple family dwelling and cannot be used for any other purpose permitted under the zoning ordinance. We disagree.
In the Time Saver case, we held that part of a building enjoying a commercial non-conforming use in a district zoned for single family use did not lose its non-conforming status, even though it became vacant for six months, where other apartments and a commercial unit of the same building had continued in a non-conforming use during that period. Likewise, in Lozes v. Waterson, 513 So.2d 1155 (La.1987), the Supreme Court held that two apartments in a four-plex did not lose their non-conforming status in a neighborhood zoned for two-family dwellings, even though the two *835 apartments were vacant in excess of six months, where the remaining apartments were still occupied. In Lozes, the entire building was considered as a single nonconforming use, and the Court concluded that all of its units would have to be vacant before the building lost its non-conforming status.
The Time Saver and Lozes cases, however, involved non-conforming uses under the City’s comprehensive zoning ordinance. In the instant case, although all four units in the building enjoy a commercial non-conforming status in this residential neighborhood under the comprehensive zoning ordinance, only one unit purports to enjoy a non-conforming use as an alcoholic beverage outlet under Sec. 5-45.1 of the City Code. Unlike the general zoning provisions, Sec. 5-45.1 is a specific statute found in a separate part of the Code dealing with alcoholic beverage outlets, which are subject to stricter licensing requirements than less heavily regulated businesses. We conclude, therefore, that to qualify for a non-conforming use as an alcoholic beverage outlet in a residential neighborhood, a bar must meet the specific provisions of Sec. 5-45.1 and not simply the requirements for a non-conforming use under the general zoning law. Thus, the continuing commercial use of the remainder of the building unrelated to the sale of alcoholic beverages is irrelevant to Schoop’s application for a liquor permit. Schoop and Chevalier’s reliance on the Time Saver and Lozes cases is misplaced.
In so holding, we reject the argument that the denial of the alcoholic beverage permit will make a portion of the building totally useless to the owner. Under the rule of Time Saver and Lozes, the part of the building formerly occupied as a bar still enjoys a commercial non-conforming use since the cleaning business has remained open and the entire building has not been vacant for more than six months. Although the landlord can no longer rent 2139 Simon Bolivar Avenue as a barroom, he is free to lease it for some other commercial use that does not require an alcoholic beverage permit. Accordingly, the denial of Schoop’s application does not remove the building from commerce.
TIMELY NOTICE OF DENIAL
Schoop and Chevalier finally argue that the City must issue a permit because it failed to deny Schoop’s application within thirty-five (35) calendar days from the time she filed it? as required by LSA-R.S. 26:85(A).[1] Schoop contends that she applied for the alcoholic beverage license on October 9, 1985, but was not notified until forty-one (41) days later, on November 19, 1985.
A similar argument was raised and rejected in Food Town, Inc. v. Town of Plaquemine, 174 So.2d 833 (La.App. 1st Cir.1965), writ refused 248 La. 356, 178 So.2d 653 (1965). Even though the authorities in Food Town had not acted on the application within the statutorily required period, our brothers on the First Circuit held that the applicant was not entitled to receive the permit since he had applied to operate a statutorily prohibited liquor store within three hundred feet of a high school. The court in Food Town held that if the premises could not be legally licensed, the town “could not be compelled to violate the law by issuing the permits.”
Similarly, in the instant case, Sec. 5-45.1 prohibits the granting of a liquor permit in any residential district of the City, the only exception being when a location has maintained its non-conforming sta *836 tus by operating as a bar with no lapse in its operations for longer than six months. Because we have concluded that the bar does not qualify for a non-conforming use under Sec. 5-45.1, the City is prohibited from issuing a liquor permit. Under these circumstances, even assuming that the City failed to notify Schoop properly, the defect does not entitle her to receive a permit that is prohibited by law.
We distinguish Di Giovanni v. Parish of Jefferson, 222 So.2d 590 (La.App. 4th Cir. 1969), relied on by Schoop and Chevalier. In Di Giovanni, an applicant applied for a renewal of his liquor license and the governing authority failed to issue or deny the permit within the thirty-five day statutory period. Under the circumstances, we concluded that the permit would be considered as having been issued because the governing authority was required to comply with the time limits of the statute. Unlike the renewal applicant in Di Giovanni, Schoop has failed to establish a prima facie right to a lawful permit.
Accordingly, the judgment of the trial court affirming the denial of Schoop’s application by the New Orleans Alcoholic Beverage Control Board is affirmed.
AFFIRMED.

. LSA-R.S. 26:85(A) provides in pertinent part:
“Municipal authorities and parish governing authorities shall, ... investigate all applications filed with them for local permits, and shall withhold the issuance of a permit where that action is justified under the provisions of this Chapter. The decision to withhold a local permit shall be made within thirty-five calendar days of the filing of the application. Within that period, the withholding authority shall notify the board in writing that it is withholding the permit and give the reason therefor. Upon receipt of this notice, ... the board shall withhold issuance of the applicant's state permit. Within five calendar days after the receipt of the notice from the local authorities, the board shall notify the applicant in writing of the action and shall assign the reasons therefor.”